May it please the Court, I'm Max Falkenflik of Falkenflik and McGarrity, counsel for Appellant Dr. Raymond Long. This is an appeal from a dismissal on a motion to dismiss. Under the Copyright Act, owners of copyrighted works have the exclusive right to reproduce copyrighted material. Appellant Dr. Long's copyrighted works, unique illustrations of the anatomical effects of yoga positions, were displayed on Facebook's website without his permission. There's no question that Dr. Long's exclusive use of his copyrighted material was violated. The only question is whether Facebook is liable for that violation. Now Facebook seeks to take the protection afforded by the safe harbor provided in Section 512C of the Digital Millennium Copyright Act. To become eligible for that safe harbor, an internet service provider is required to tape down copyright infringing material expeditiously, even if posted by a third party, when either the service provider has actual knowledge of infringement, which includes knowledge of facts from which infringing activity is apparent, or when the copyright owner gives the service provider notice of infringement and a demand to have the infringing material taken down. Congress clearly required the decision on whether the takedown of infringing material was, quote, expeditious, close quote, to be governed by the facts and circumstances of the case and place the burden squarely on the service provider to prove that it was. And with respect to that statement, we recite the Senate report and extensive commentators on page 17 and 18 of our opening brief. Instead of following the law, however, using summary judgment rulings as the court's guide, the lower court concluded that it could create what is in effect a statutory presumption, albeit potentially rebuttable, that five business days is expeditious, even though the Congress choose not to include any such statutory presumption. Such a rewriting of the statutory standard would be inappropriate in any case, and it's particularly inappropriate to apply such a presumption here, where the court ruled as a matter of law, without any showing by Facebook that there was any difficulty whatsoever in taking down the infringing material immediately upon the receipt of notice. Can I ask you about the knowledge element of what you need to show to state a claim? Am I right that our court requires that you allege that Facebook had knowledge of specific infringing images? And if so, can you point us to how Facebook was supposed to be able to tell exactly which specific images were infringing? Okay, well, thank you, Your Honor, and there are two issues there, which is what is the knowledge that's required for them to have, and secondly, whether or not the takedown notice or other facts gave them that knowledge. Under 17 U.S.C. Section 512C3A2, if identification of the copyright work is claimed to have been infringed, or if multiple copyright works on a single site are covered by a single notification, a representative list of such works is required. So that's the first issue with regard to what the takedown notice provided. The second issue is the fairly commonplace, I think, elemental observation that Facebook had that knowledge, and they knew they had that knowledge because based on that knowledge, they actually took down all infringing material. Now, Dr. Long provided Facebook with takedown notices, and some examples are at the record at pages 145 and 147, which provided Facebook with a direct identification of the actual page on which all of the copyrighted material was being posted. But I think your allegation is about, as I understand it, the images that were essentially the links, the images that were on Facebook. I think, if I understand right, your allegation is that that was the infringement, not that some other website somewhere else was infringing, right? That's correct, Your Honor, and the images were on Facebook, and they were posted there and used as bait to have viewers click on them and then be redirected to another site masquerading as Dr. Long's blog page, which contained malicious software and also exposed the viewers to pornography and effectively represented Dr. Long as a pornographer. So, yes, we say that what happened was, and to address Judge Gould's statement at the beginning, the site was hacked and administrative control was taken over by Tammy Dorsett on May 24th, and Dr. Long on May 24th notified Facebook that had occurred. That notification made clear that every image posted on Dr. Long's hacked website by Tammy Dorsett was infringing, because he gave them permission to post nothing. Well, so, I mean, maybe that's right, but, and I don't use Facebook, so I apologize if I have a mistake in how I explain this, but wouldn't there be history in the page of things, I mean, the new things might have been Tammy Dorsett, but the old things would have been posted by Mr. Long, right? And how would those be infringing? They weren't. The old things were not, only the new things. So it's not everything on the page that is infringing. It's everything posted by Tammy Dorsett from the moment Tammy Dorsett took over administrative control until the moment control was redirected to Dr. Long. And, in fact, on June 1, that's precisely what Facebook did. But if Facebook is just getting this complaint and looking at the page, they can't assume every image is infringing. How are they supposed to know which images are infringing? That was my original question. I'm still confused about the answer. And the answer is, the way they knew, and it's demonstrated by the conduct that they knew, the way they knew the images were infringing was they were posted on or after Tammy Dorsett took control. Now, what, in fact, Facebook did effectively by invoking a computer code, the equivalent of flipping a switch, is on June 1, they removed Tammy Dorsett. But how do they know that everything posted after she took control is copyrighted? Because Dr. Long said so. And under the Digital Millennium Copyright Act, under 512C, Dr. Long said he did not give Tammy Dorsett the permission to post a single one of his copyrighted images. And in fact, under the statute, all that is required is to give Facebook sufficient evidence to allow them to locate the material, which they in fact did, so they have to have sufficient evidence, and locate which images to go, Judge Friedland, to your question. How could Facebook know which images were infringing and take them down? Well, they did. They automatically took them all down by themselves without any intervention by Dr. Long, and restored the page to its prior condition, prior to the hack by Tammy Dorsett. But that could have been over-inclusive, right? I mean, where does he explain which exact images, or that all of the images, can you point me to somewhere where he said exactly how to define all of the images then, if that's what you're arguing? All of the images posted by Tammy Dorsett, Your Honor. Right, but some of them might not, I mean, I think you're saying all of them are copyrighted, so we should just assume that, but where did he say that? Maybe he said that somewhere. Could you point me to it? He said that at page 145 and 147 of the record. He said on 145 that the page was hacked today by something going by the name Tammy Dorsett, and multiple articles were copied onto your server without permission. The original articles, to which I own the exclusive copyrights, can be found at... I don't read that to say everything that has been posted since she took control is copyrighted and thus infringing. Well, respectfully, Your Honor, I do read it to say that everything that was posted by Tammy Dorsett was infringing, and if you go to page 147 of the record, it also says, whoever hacked my site is making unauthorized use of my copyrighted materials to spam my audience with Trojan viruses. This is absolutely urgent, so that's at page 147. Right, I mean, that's a terrible harm that he suffered, but that's not about copyright infringement, is it? Well, Your Honor, it is about copyright infringement if he says that he didn't authorize the posting of any of those images. And, in fact, if you look at the requirements of the statute itself, the statute itself only requires that a 512c notice... Let me just read the language of the statute, if I may, Your Honor. Well, I think you read that language to us before, right? But, I mean, our court at Amazon required the knowledge of specific infringing material, so we have an interpretation of that language. Well, if what happened was that Facebook restored control to Dr. Long and he had to remove it himself, he would have. But what Facebook did instead was the perfect solution. What Your Honor is finding problematic to identify, Facebook found simple to identify. And I think we have to really move towards the burden of proof here. The burden of proof is on Facebook to prove that it's entitled to the exemption, and they proved nothing. They didn't prove that you couldn't identify the posting images, other than my friend Mr. Goertz's creative imagining that you had to look at each image separately. You did not. If Dr. Long had a copyrighted image and he had the right to post it or not on his website, and without his permission, somebody else posted that copyrighted image, that's infringement. Now, the fact is that there is little question that the court below imposed the burden of proof on Dr. Long to prove that, and by the way, the court found no. I'm sorry, can I ask you a different question because you're running out of time and I have a different topic I'd like to ask you. So, you say pretty specifically in your reply brief that the only infringing activity that you're alleging is storage, not caching or linking. Do you still maintain that? Should we only be focused on storage here in this case? I think that that's sort of a false dichotomy because the issue is whether or not there was a copyright takedown notice that was sufficient to give Facebook knowledge of where to find the material and remove it. And the fact that Facebook acted on that information alone and then located that infringing material and removed it means that the notice was sufficient. The caching and linking really don't apply here, although there was a direction from the image to a link, but the only reason that became relevant is that my friend's brief argued that separate notices under 512 B and D were required, which they were not. Only the Copyright Act is fairly unforgiving and the only exemption and Facebook only proves that it's exempt, only meets its burden if it can show that it acted expeditiously to remove infringing material. And there is never any finding by the court below or even any argument by my colleague that you couldn't identify the material. They do claim that identity would take manual review of each image, but there's just no evidence to prove that's true. That's not what the complaint alleges. A fair inference from the allegations of the complaint is every single image posted by Dorset was infringing. But wouldn't, if you're alleging storage, wouldn't you have to be alleging some sort of uploading of material by Dorset? And I'm not sure you've alleged that. But actually we have, Your Honor. We've alleged it and the copyright notices and the takedown notices that were sent to Facebook allege that. But as I read it, you're alleging, I mean, maybe there's just a lot of confusion here, but it seems like your pictures are of links and you're alleging that she was linking to this other website, which I don't think requires, as I understand it, any kind of uploading onto Facebook itself. Well, that's, I think Your Honor is misreading our allegations, respectfully. I think the allegations are very clear and the takedown notices are very clear. So do you think you have alleged that she actually, she or whoever Dorset is, uploaded things onto Facebook rather than just linking to the other site? I think the record proves that allegation unequivocally. It wasn't just a link. It wasn't just like Google. It wasn't that they just posted, if you want to see images by Ray Long, follow this link. It was a picture that embedded a link and directed the user to another site. And the picture itself is infringing. The link is infringing. The malicious software to which the users were exposed was inappropriate and dangerous. And there's no question. This is not a case like, for example, BitTorrent. I think Judge Erickson had a question and I might have interrupted her, so maybe let's turn to her. And I know your time is up, but I am interested in your view on whether, especially under Amazon, a plaintiff can plead a common law copyright infringement case without following this, without also alleging the absence of the safe harbor provisions, whether it be for caching, linking, or storing. I know the district court conflated them, but in your view, is it possible to make the common law finding without following all those statutory provisions? Well, Your Honor, I think that since the Digital Millennium Copyright Act places the burden of affirmative defense on, in this case, Facebook, as my colleague admits in his brief, since that burden is on them and it's an affirmative defense, the answer to your question is yes. I just have to plead infringement and he has to plead and prove the entitlement to the protection of the safe harbor. And I think that's very clear. I think the district court not only conflated it, but got it backwards. The district court basically held that Dr. Long had to plead and prove the absence of expeditiousness. And I think that by itself would be a ground for reversal. But I think that the record on appeal is absolutely clear that Dr. Long's allegations create a plausible inference that every single image on the site posted after Dorsett took over was a copyright infringement. And that's all we have to do as a matter of pleading law. I think even if it were under the Celotex standard on a Rule 54 motion, their allegations and claims don't pass muster. We should be able to go to a jury and prove our case. Thank you, counsel. I think although your time was not only up but over by a few minutes, for your planning purposes, I'm going to give you three minutes of extra time on rebuttal after Mr. Gratz makes his argument. And also for appellee, if you want extra time of three minutes, we'll give you that too. Thank you very much, Your Honor. May it please the court, my name is Joe Gratz at Duray Tongari in San Francisco, and I represent Facebook. The district court correctly ruled that all of Dr. Long's claims were subject to dismissal at the pleading stage. I'll begin with the copyright claims, and I want to begin with the issue that Judge Friedland raised, about what specific things were infringing and what specific things were identified with what specificity in the notice. This court's cases hold, as I think Judge Friedland, you recognized in the Amazon case and elsewhere, that there needs to be specific identification of infringing material to be removed. And that identification can't be by category or can't be by a general rule. It needs to be by specific identification of specific material. And in this court's other cases, it holds that identification needs to be item-specific, needs to be by URL or another sort of machine-readable identifier. Here, what we have is a general statement that everything on this page needs to be taken down, or at best, that everything posted by a particular user on this page needs to be taken down. He gave examples. He gave links to articles and pictures. So wasn't that pretty specific? So, Your Honor, he did give examples, but he did not give the sort of specificity that's required by this court's cases, particularly Giganews. So turning to the specifics… Giganews was a summary judgment case, not a Rule 12 case. Giganews was a summary judgment case, but there isn't anything different about the record that would be before the court on summary judgment about what the notices contain here versus in that sort of situation. In the record, as Mr. Folkenflik referred to around page 148 and, indeed, turning to page 154, I think it's helpful to see what was provided to Facebook here. On page 153, there are URLs, but those are not URLs on Facebook. On page 153, these are identification of the infringed material on Dr. Long's website. That, by the way, is what the statute allows a representative list of, the infringed material, not the material to be removed. On the following pages, starting on page 154, we have identification of what Dr. Long is asking to be removed, what he is saying is infringing, and that comes here critically in the form of screenshots, not of specific identification with identifiers that identify particular images to be removed with a URL or other sort of specific identifier of the type that this court required in GigaNews and in the Motherless of the Venture Against Motherless case and in other cases like Zillow. We have screenshots, and screenshots are not specific enough to identify material to be removed when there isn't a URL provided, and that is the holding of the GigaNews case. I think... Well, the URL, I mean, it's an image of part of Facebook, though, right? So why isn't it enough to show Facebook what the problem is of what he's pointing to on Facebook? So a couple of things, Your Honor. I agree that this is an image of a thing that is on Facebook, just as the screenshots in the GigaNews case were screenshots of things on GigaNews. What the court held in that case, and I think what the court's cases establish as a rule, is these screenshots don't specifically identify an item with sufficient specificity to go find it without sort of undue looking around and searching for it. That is, we don't take the position that it is literally impossible to go look through the page and scroll through each image until you find one that looks like the thing that's on page ER 154 and remove it. It's not, but literal impossibility is not the standard. The standard that this court's case establishes that it needs to be, for example, as the court says in the GigaNews case, not onerous and unreasonably complicated. Or in the Ventura Content case, that as a practical matter, what the infirmary needed to remove them was a URL for each. And so while these screenshots... And so is the problem in your view that these are all basically to the same URL? It's like that Facebook page, and then there's somewhere within the page, but the URL is the same for all of it? Is that what you're saying? Two problems, Your Honor. That is one of them. That is, he does provide one URL in some of his notices, which is the URL for the entire page, but he isn't asking and can't be asking that the entire page be taken down. When he identifies specific pieces of content that he says are infringing, he doesn't provide specific URLs for each one. If he has provided specific URLs for each one here, like he does for the allegedly infringed content on page 153, or indeed as he does in other DMCA notices that are in the record to other service providers, such as those that appear to HostGator at ER 100, this would be a very different situation with respect at least to the question whether the notices were specific enough to require Facebook to take action and to require Facebook to remove the material. So those are the two distinctions between Your Honor's hypothetical and this one both. This is all on a single—they only identify one URL, and that the material is identified in the form of screenshots, which this Court has recognized sort of can't be dealt with in a sort of efficient manner as a practical matter. Isn't the level of efficiency or difficulty in removing the material something that's going to be fact-specific and difficult to evaluate just from the face of the complaint? So, Your Honor, I think in this case it isn't. And one reason it isn't is because the appellant's position is not that Facebook should have gone through and looked at each of these and removed them on an item-by-item basis. That isn't here what the appellant says should have happened. What the appellant says should have happened, and indeed as the appellant says on page 8 of his reply brief, is the only thing that in his view would have solved this problem is a wholesale, over-inclusive removal of everything done by Tammy Dorsett and his restoration as administrator of the page. So while there might be some cases in which there was a further record beyond what's before the court at a motion to dismiss that might be needed to decide what needed to be done or what level of specificity there was or how onerous and unreasonably complicated it would have been to find and remove the material, here the record and the positions taken by the appellant make that simple. Can you point to any case that has resolved a DMCA defense at a motion-to-dismiss stage? Any published circuit court case? So I am not sure, Your Honor, that there are court of appeals cases that have resolved DMCA defenses on a motion to dismiss. There are plenty of cases that have resolved DMCA cases both in the district court on motions to dismiss and even in this court on summary judgment records that are substantively the same as the admittedly somewhat unusual motion to dismiss record that the court had before it here. That is, the record before the court here about what was in the notices may not be there in every case, and there may be disputes about it in many cases. Here, there is no such dispute, and that sort of fairly voluminous record of communications is before the court here just the same as it would be at any other stage of the case. And so that allows the court to make a determination as a matter of law, looking at materials and comparing them to the relevant standard as established by, for example, the Giga News and Motherless cases. Counsel, if I could interject a question. After the district court dismissed the claims, did the district court give the plaintiffs an opportunity to amend their complaint? The district court did, Your Honor. The district court specifically did so on its own motion with respect to the 17-200, the California UCL claim. And with respect to that claim, Dr. Long declined the court's invitation to file a further amended complaint. Dr. Long has not requested further leave to amend with respect to any other claims, either in the district court following its ruling or in this court. And under the Steinle against City and County of San Francisco case that appears at 919 F. 3rd 1154, that's something that by not raising it in the opening brief, the appellant would have waived. Were that the thing that they wanted to do next? Can I ask you, so if I understand the technical side of this, it seems like they are alleging linking and maybe caching and not storage. But maybe they have stated a claim for linking and caching, and I'm not sure how we deal with the general idea that we read pleadings in the way that's favorable to the plaintiff on this issue that's very technical and confusing. Can you speak to that? So to the extent the court finds that what is alleged, that they have adequately alleged a claim for copyright infringement arising out of linking to infringing material or the caching of infringing material, as opposed to the storage of uploaded infringing material. To the extent the court finds that, that is actually fairly easy to address in the following way. Facebook asserted in its motion to dismiss the DMCA defense is relevant to caching 512B and linking 512D. The easiest way of, Dr. Long doesn't contend that he sent any notices that could meet the requirements of those sections. He contends only that he sent a notice that would meet the requirement of 512C, a separate and independent safe harbor. And so if the court finds that they've alleged a prima facie case of linking and caching, well, that doesn't help Dr. Long too much, because Facebook has the 512B and 512D safe harbors, and I think everyone agrees there were no 512B or 512D notices that were sent by Dr. Long that could overcome those, because those portions of Section 512 have separate and independent requirements that are different than the requirements for a 512C notice. Particularly, and importantly in the 512B context, that they've already had it removed from the underlying site. But is it the plaintiff's job to figure out whether Facebook is caching, linking, or storing, and to put that in the complaint? Or is that Facebook's responsibility to come back and say, we're not liable for monetary damages under these provisions, because look at the inadequacy of the notice. But it seems to be an outgrowth of a reading of Amazon, which was actually a preliminary injunction case, to say that there is no difference between the pleading requirements for a copyright violation and the ability to overcome a defense based on one of the safe harbor provisions in the statute. It's the plaintiff's job to plead facts showing what the copyright infringement was. And if that copyright infringement took the form of X versus Y versus Z, or was done by person P, D, or Q, those things need to be pleaded by the plaintiff in order to make out a copyright infringement claim. This is not to say that some plaintiff might not be able, consistent with Rule 11, to plead on information and belief that it was done in matter X versus matter Y versus matter Z, by a variety of different people. That is, a plaintiff might be able to plead consistently with Rule 11 what they would need to plead to show either that it was this or in the alternative it was that. Here, though, we just don't have any facts that add up to that claim. Mine is a procedural question. Why is it the plaintiff's responsibility to prove any of that? That's a very unusual reading of any affirmative defense to say that the initial complaint has to be sufficient to overcome any foreseeable affirmative defense. Our position is not, Your Honor, that the appellant needed to plead facts that overcome the defense. What I understood, Your Honor, to be asking about was what the plaintiff needs to plead about, what the nature of the infringing activity was that is being complained of, and that the plaintiff does need to prove in order to make out their case for copyright infringement. As to how that fits into or as to facts that are not needed for a prima facie case but may be relevant to an affirmative defense, the plaintiff doesn't need to plead those. And if the record didn't have facts in it that allowed the district court to make a determination on an affirmative defense, the defendant coming forward with a bunch of facts at the pleading stage doesn't get them there. In this case, though, those facts are all in the record. Those facts are all properly before the court because the plaintiff chose to include them and refer to those documents, and so that all of this set of documents, making the full documentary record of everything that happened in those eight days in 2015, is properly before the court. Okay, but that's not—there are things that are going to be within Facebook's sole ability to locate. You know, the difficulty of responding, whether or not you had a financial gain. You know, if you go through all the technical requirements of A, B, C, D, some of those things are just not ever going to be within the knowledge of any plaintiff. I'm sorry, Your Honor. There certainly have been cases where a defendant asserted the Section 512 State Harbors on a motion to dismiss, and the plaintiff said, well, no, you can't assert that because of, you know, reason X or reason Y or reason Z, and these are requirements in the statute that aren't pleaded in the complaint. No such argument was made here at any point, ever. And so the plaintiff—the appellant here does not take the position that the appellant wins because of some other requirement in Section 512. I feel compelled to note that court after court has determined that Facebook, in fact, meets all of those other requirements in Section 512, but I understand that it's a procedural matter. But not—they have not done it on a motion to dismiss. We're not just going to take judicial notice of the fact that Facebook always does this. I agree, and that is why the fact that the plaintiff didn't raise this issue as a reason why Facebook shouldn't be entitled to the 512 defense at the pleading stage is so critical in this case and may set this case apart from at least some other cases where courts find that they can't make a final determination on the 512 defense at the pleading stage. I see that my time has expired. I would be happy to answer any other questions that the panel has. Otherwise, I will conclude by saying that Dr. Long was a victim of hackers and not a victim of Facebook, and that his claims were appropriately dismissed and that the judgment of the district court should be affirmed. Okay, if there are no questions from Judge Erickson or Judge Friedland now, we'll proceed back to Mr. Fulkenflik for his rebuttal argument. Thank you, Your Honor. I'm concerned that the complications of the technical issues and my colleague's eloquence are obscuring the simple fact. Mr. Gertz repeatedly says Dr. Long didn't give Facebook enough information to identify the infringing material and to remove it. He says that, but they didn't. They identified all of the infringing material I have referred to and removed it. Every last one of them. Well, they also removed lots of words in between and things between the images that were definitely not copyrighted. I mean, they basically just took down part of the page, right? That doesn't show that they knew exactly what was infringing, I don't think, does it? They took down, based on their judgment, when the site has been hacked and administrative control has been misallocated to an unauthorized person, they took down everything that person posted. As they should, because of hacking, not anything about copyright, though, right? Well, why does the fact that they recognize that hacking is very bad and that Mr. Long was very damaged by this, the recognition of that doesn't necessarily show that they did a copyright evaluation, right? They didn't have to do a detailed copyright evaluation under this statute, Your Honor. Under the statute, it's very clear that if there's a single site, which in this case, the site run by Dorset is a single site, the party need only make a single notification and a representative list of such works. Now, there's no question that the copyright notices and all of the attachments that Mr. Kurtz refers to repeatedly did that. They included pictures. They said they were all copyrighted and infringing. They included URLs. They included all sorts of details that would have been necessary to prove copyright infringement. But the statute doesn't require that every single infringement image be identified. And I might add, to go to Judge Erickson's point, Facebook says, through my colleague, that it was difficult to determine what images were infringing. But Facebook never said that. Only my colleague said that in a brief before the court. And as Judge Erickson pointed out, there are pleading issues here. We cannot assume that it was difficult for Facebook to identify infringing images to go to Judge Friedland's point. If Facebook doesn't say it was difficult to have competing images, to use a thought experiment, what if Facebook admits they were able to identify all infringing images and remove them? But it rolled back. And so it removed, if Judge Friedland, if you're right, and I'm not sure that you are because I haven't looked at the words in between, were uncopyrighted material. But if you're right and they were over-inclusive and removed all copyrighted material and something else, which Dr. Long didn't want posted there, why does Facebook get the benefit of that over-inclusiveness when it chose to remove those materials? Now, it's true that if Facebook just restored Dr. Long to administrative control, he could have gone through the images one by one and removed them himself. But they chose not to do that because in their experience and in their wisdom, everything that the hacker did while in control should be removed. And that included removing 100 infringing images that, to meet your point, Judge Friedland, 100 infringing images that Dr. Long specifically identified were posted on the Facebook site by Tammy Dorsett. So I think that, I've gone over my three minutes, but I think that it's very, very clear that the notice was sufficient. It's not at all clear that Facebook could not have done the same thing on the very day they received the notice. In fact, if the court were to ask my colleague, Mr. Gerdes, today, in this argument, does he know that whether Facebook could have removed all the infringing materials on May 24th, I believe he would have to answer one of two ways, either yes or I don't know. He cannot assert, and there's nothing in the record that supports the conclusion, that they either could not specifically identify the material or that they could not specifically remove all infringing material. That could be removed all infringing. Excuse me, Your Honor. Thank you. We're a couple of minutes over the extended time. So we need you to conclude your argument. Okay. Just the bottom line, Your Honor, is Facebook was shown specifically infringing material on the website posted by Tammy Dorsett. It was specifically identified. It was attached to the notices. The same material Mr. Gerdes cites. Facebook knew that it was there, and Facebook proved that it could remove that material by the flip of a switch. Now, Judge Friedland, if they removed material in addition to copyright infringing material, why does that give Facebook a defense under 512c or anything else? Thank you for your conclusion. If I conclude your argument, I meant in a couple of sentences, so we really have to end this. No, I'm done, Your Honor. Thank you. Let me just ask Mr. Gratz, did you have anything that you wanted to add? I would be happy to answer any questions from the panel that I don't have anything further on. Okay. So unless one of my colleagues has a question, as I do not, I'm just going to reiterate how much we appreciate the advocacy from Mr. Fulkenflik and Mr. Gratz, and this is a challenging case. There are special burdens on the advocates, both from the fact that it arises in a pandemic, and also from the fact that federal judges are discouraged from using social media. So our panel may know even less about this than you imagine, but we will be able to study the record, and we will figure out what our position is and get back to the parties in due course, so thanks again. So without further ado on that, the Wong v. Dorset shall be submitted. We'll hope that Dorset someday is found and brought to justice, and the parties will hear from us in due course. Thank you, Your Honor. Thank you, Your Honor. You're welcome. Okay, then we have one more case on our docket, and that's one more case on the argument document, which is Jacob Beatty v. Ford Motor Company.
judges: Gould, Friedland, Ericksen